```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
              Plaintiff,         )
                                 )
         v.                      )    No. 4:05 CR 56 CEJ
                                 )                   DDN
RICARDO L. RUSAN,                )
                                 )
              Defendant.         )
```

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 14 and 21, 2005.

Defendant Ricardo Rusan has moved to suppress evidence and statements (Doc. 27). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

Defendant's statements

1.  On November 12, 2004, the Southern Commercial Bank facility, at 3207 Meramec Street in the City of St. Louis, was robbed. Detective Patrick Drennan, a 17-year veteran of the St. Louis Metropolitan Police Department, investigated the robbery and interviewed the victim bank teller. She provided Det. Drennan with a description of the bank robber. Another employee of the bank also witnessed the robbery.

2.  On January 8, 2005, Ricardo Rusan, in St. Louis police custody for unrelated matters, was arrested for the robbery, because the police had information relating him to the bank robbery. The police brought Rusan to the South Patrol Detective Bureau[1] in the afternoon of January 8 to be interviewed.

---

[1] The South Patrol Detective Bureau investigates every type of reported crime, including bank robbery.

3. Rusan was placed in a small interview room. Det. Ronald Fiala, a 19-year veteran of the St. Louis Police Department, Det. Drennan, and a Federal Bureau of Investigation Special Agent participated in the interview.

4. Before questioning Rusan, Det. Drennan advised him of his constitutional rights to remain silent and to counsel, both orally and in writing. Drennan read aloud to Rusan a warning and waiver form and Rusan read the form to himself. Rusan placed his initials next to each statement of a right and signed the form in three places, expressly stating that he understood his rights and waived them. (Gov't Ex. 1.)

5. Thereafter, Officer Fiala told Rusan that the police suspected he had robbed the Southern Commercial Bank. Rusan initially denied having anything to do with the robbery. However, Officer Fiala told Rusan that they had surveillance photos from the bank from which it would be hard to dispute that he was the bank robber. Rusan asked to see the photos. After viewing them, he agreed that they would be hard to dispute and he confessed to robbing the bank.

6. Thereafter, at 4:09 p.m., Rusan, after again being orally advised of his constitutional rights, which he acknowledge he understood, repeated his oral statements to the police and this time they were audio recorded. Rusan again incriminated himself in the recorded statements. The taping ended at 4:17 p.m. (Gov't Ex. 2.)

Line-up display

7. Also on January 8, 2005, Officer Fiala put together a line-up of four individuals to display to the victim teller and the other bank employee witness. In the early investigation of the robbery, the victim teller gave the police a physical description of the robber. The line-up was composed of Rusan in position No. 2 (chosen by Rusan) and three male, African-American police officers. Each of the participants had a mustache. Two, including defendant, had complexions slightly darker than the others. Defendant was slightly shorter and of slighter build

than the others, and he alone wore an upper garment that was not of a plain, solid color, without markings. (Gov't Ex. 3B.[2])

8. The victim teller and the other witness viewed the line-up in a small interview room in the police station at approximately 5:40 p.m. Neither of the two witnesses were re-interviewed before viewing the line-up. Also, Det. Drennan did not discuss with the victim teller the fact that a bank surveillance photograph had been published in the newspaper. While it is not clear whether they came to the station together, they were together in the police station lobby.

9. Before the viewing, Det. Drennan instructed the two witnesses at the same time. He told them there would be four participants in the line-up, identified from left to right as Nos. 1, 2, 3, and 4; and that the witnesses could see the four subjects, but the subjects cannot see them. He told them that, if they saw anyone who committed the robbery, they should state that to the officer. He also told them that they did not have to identify anyone. Det. Drennan did not tell the witnesses that the suspected bank robber was in the line-up. No one told the witnesses whom to identify and they were not shown photos of Rusan.

10. The witnesses separately viewed the line-up. Each witness stood in one side of the small interview room, viewing the subject through a one-way glass partition, while the subjects stood in a small portion of the room on the other side of the glass partition. The victim teller identified line-up subject No. 2 as the robber and then left the viewing room.

11. Without speaking with the victim teller, the other witness was brought into the viewing room. After looking at the line-up subjects, the second witness stated that No. 2 had cheekbones similar to the robber's. However, the witness could not identify him as the robber. Neither viewer picked any other subject as the bank robber.

---

[2] Ex. 3B is a color photograph of the four line-up subjects. Because the interview room was so small, the photograph was taken outside the interview room where the subjects were viewed. There was no significant difference between the photograph and the actual line-up.

**DISCUSSION**

The motion to suppress evidence should be denied. First, defendant's statements were lawfully obtained. The government has the burden of establishing the admissibility of a defendant's statement by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972); Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); United States v. Black Bear, 878 F.2d 213, 214 (8th Cir. 1989).

The admissibility of custodial statements of a defendant which resulted from police interrogation depends upon whether the defendant had been advised of his rights, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966); whether the defendant knowingly and voluntarily waived the Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979); and whether the statements were voluntary. In this case, defendant was clearly in custody when interrogated by the police, albeit on an unrelated case. Before being asked any questions, the officers complied with Miranda by orally and in writing advising him of his constitutional rights to remain silent and to counsel, and defendant expressly waived his rights. Thereafter, he un two sets of oral statements, one unrecorded and one recorded. The evidence is also very clear that, during the interview, defendant was competent and the police did not in any way coerce his statements. Therefore, his statements were voluntary. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); Moran v. Burbine, 475 U.S. 412, 421 (1986).

The evidence of the line-up identification should not be suppressed. Under the Due Process Clause of the Fifth Amendment, identification evidence must be suppressed, if it results from procedures that are unnecessarily suggestive and that may lead to an irreparably mistaken identification. Stovall v. Denno, 388 U.S. 293, 301-02 (1967). The evidence adduced at the hearing established that the procedure used by the police did not result in an identification that would offend defendant's due process rights. While there were physical appearance differences between the line-up subjects, those differences were not such to cause the victim teller to make an erroneous identification. The four subjects were all black men, none wore glasses, all wore mustaches, all had reasonably similar hair styles, and

all reasonably similar facial complexions.  The response of the other employee witness, that the cheekbones of subject No. 2 were similar to the robber's and that the witness could not identify No. 2 as the robber, corroborate that the lineup procedure was not unduly suggestive.

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 27) be denied.

The parties are advised they have ten (10) days to file written objections to this Report and Recommendation.  The failure to file objections may result in a waiver of the right to appeal issues of fact.

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 1, 2005.